**In re Billy Joe PATRICK, Debtor.**

**Bernard Lumber Co., et al., Plaintiffs,**

**v.**

**Billy Joe Patrick, Defendant.**

**Nos. 99–3213, 99–32694.**

United States Bankruptcy Court, N.D. Ohio.

Aug. 8, 2001.

C. Drew Griffith, Toledo, OH, for plaintiffs.

K. Alex Thornton, Willard, OH, Co-Counsel for plaintiffs.

H. Buswell Roberts, Jr., Toledo, OH, for defendant.

### DECISION AND ORDER

RICHARD L. SPEER, Chief Judge.

This cause comes before the Court after a Trial on the Plaintiffs' Complaint to Determine Dischargeability. Originally, the Plaintiffs' Complaint rested on three statutory grounds: 11 U.S.C. § 523(a)(2)(A); 11 U.S.C. § 523(a)(2)(B); and 11 U.S.C. § 523(a)(6). These statutory grounds, however, were later narrowed after this Court, in a Memorandum Opinion and Decision, granted summary judgment in favor of the Defendant on the Plaintiffs' compliance with the requirements of § 523(a)(2)(B) and § 523(a)(6).

With respect to the Plaintiffs' cause of action under § 523(a)(2)(A), the Court found that based upon the facts presented—which for brevity's sake will not be repeated here in their entirety—a plausible inference of fraud had been raised. In particular, the Court found that summary judgment was inappropriate given the existence of two indicia of fraud: (1) the Defendant gave certain assurances of future payments at a time when he was experiencing financial difficulties; and (2) while the Defendant was giving his assurances of future payments to the Plaintiffs, the Defendant was also executing patently false lien waivers. (Court's Memorandum Opinion and Decision dated May 29, 2001, at pg. 7)

Based upon this decision, the Court, at the Trial held on the Plaintiffs' Complaint, limited the scope of factual inquiry to solely those questions relating to the Defendant's purported fraud under § 523(a)(2)(A). From this inquiry, and from the other evidence presented at the Trial, the Court, in accordance with Bankruptcy 7052, makes the following findings of fact:

The Plaintiffs supplied, on account, building materials to the Defendant who operated, as a general contractor, a home construction and remodeling business.

After accounting for a set-off the Defendant had against the Plaintiffs, the Defendant, at the time of his bankruptcy petition, was indebted to the Plaintiffs in the amount of $145,725.27.

Prior to filing for bankruptcy, the Defendant entered into various contracts for construction; the specifics of these contracts were handled by the Defendant's wife. As a part of these construction contracts, the Defendant was due bank disbursements, at various intervals of construction, for the projects he was working on. These bank disbursements were then used by the Defendant to pay the financial obligations incurred by his construction company.

In 1997, the Defendant, after experiencing financial difficulties with his construction business, became delinquent on his accounts with the Plaintiffs. At this time, the Defendant, on various occasions, told representatives associated with the Plaintiffs' business that he would try to pay his indebtedness when he could. Based upon such representations, the Plaintiffs continued to extend the Defendant credit for building materials.

In the period leading up to the Defendant's bankruptcy filing, the Defendant received approximately $350,000.00 in bank disbursements for the construction projects he was performing. Of this amount, well over $150,000.00 dollars was paid to the Plaintiffs.

At a time when the Defendant's financial condition was becoming increasingly precarious, the Defendant and various representatives of the Plaintiffs had a formal meeting at which time the Defen-

dant stated that he would pay his debts to the Plaintiffs as he received his periodic bank disbursements. Thereafter, many of the payments the Defendant made to the Plaintiffs correspond closely to the bank disbursements the Defendant was receiving.

In order to receive his bank disbursements, the Defendant was required to sign a lien waiver stating that all interested parties had been paid. On many occasions, the Defendant signed such lien waivers despite the fact that he knew money was owed to the Plaintiffs.

## LEGAL DISCUSSION

It is a long-standing principle of bankruptcy jurisprudence that only those debts honestly incurred are afforded the benefits of a bankruptcy discharge. *Cohen v. de la Cruz,* 523 U.S. 213, 217, 118 S.Ct. 1212, 1216, 140 L.Ed.2d 341 (1998). Section 523(a)(2)(A) sets forth this principle by excluding from the scope of a bankruptcy discharge those debts incurred by a false pretense, a false representation, or actual fraud; specifically, § 523(a)(2)(A) of the Bankruptcy Code provides that:

(a) A discharge under section 727, 1141, 1228(a) 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by–

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

■ As with most other exceptions to discharge, the moving party bears the burden of proof; this burden may be sustained under § 523(a)(2)(A) by a creditor establishing, by a preponderance of the evidence, that the five common law elements of fraud have been met. *Burt v.*

*Maurer (In re Maurer),* 256 B.R. 495, 500 (8th Cir. BAP 2000). These elements are as follows: (1) the debtor made false representations; (2) the debtor knew such representations to be false at the time they were made; (3) the representations were made with the intent to deceive the creditor; (4) the creditor relied on the representations; and (5) the creditor's loss was the proximate result of the misrepresentation having been made. *Colonial Pacific Leasing v. Mayerson (In re Mayerson),* 254 B.R. 407, 409 (Bankr.N.D.Ohio 2000); *Stifter v. Orsine (In re Orsine),* 254 B.R. 184, 188 (Bankr.N.D.Ohio 2000).

■ With respect to these elements, and as is common in many cases involving actions brought under § 523(a)(2)(A), the major point of contention between the Parties centers around the third element enumerated above: whether the Defendant's representations were made with the intent to deceive the Plaintiffs. For purposes of § 523(a)(2)(A), a debtor's intent to deceive a creditor occurs when the debtor makes a false representation which the debtor knows or should have known would induce another to advance money, goods or services to the debtor. *Herbstein v. Bruetman (In re Bruetman),* 259 B.R. 649, 665 (Bankr.N.D.Ill.2001). As would be expected, however, rarely, if ever, will a debtor ever admit to acting in such a manner. As a result, a party seeking to establish a debtor's fraudulent intent may rely on circumstantial evidence relating to the debtor's state of mind at the time of the alleged fraud. *McCrary v. Barrack (In re Barrack),* 217 B.R. 598, 604, 607 (9th Cir. BAP 1998). Such circumstantial evidence may include not only the debtor's conduct at the time of the representations, but also any subsequent conduct, to the extent that such conduct provides an indication as to the debtor's state of mind at the time of the actionable representations. Once such evidence is produced, a bankruptcy court is then to consider whether the circum-

stances, as viewed in the aggregate, present a picture of deceptive conduct by the debtor which indicates an intent to deceive the creditor. *Groetken v. Davis (In re Davis)*, 246 B.R. 646, 652 (10th Cir. BAP 2000).

■ In accordance with this standard, the Defendant portrayed himself as simply an honest debtor, who, while trying to manage his debts, was unable to generate a sufficient cash flow to service his debt obligations. After weighing the evidence which exists in this case, such a characterization seems somewhat credible. The reason for this is that the Defendant, while receiving construction materials on credit from the Plaintiffs, continued to pay the Plaintiffs a significant percentage of the money he was receiving in the form of bank disbursements. Along this same line, a review of the record of this case shows that the Defendant was, in many instances, making such payments almost contemporaneously with the bank disbursements he was receiving. In this Court view, such a course of conduct seems inconsistent with a person who was intending to deceive his creditors. In addition, and further lending credence to the Defendant's honesty in his dealing with the Plaintiffs, is the fact that the Defendant seems to have left the general financial affairs of his business in his wife's hands; a fact, which although not excusing the Defendant's execution of patently false lien waivers, does help explain such conduct without the presence of fraud.

The Plaintiffs, however, in opposition to the weight such considerations should be afforded, raised a couple of points of contention. First, the Plaintiffs suggest that the Defendant's payments to the Plaintiffs should, in its weight as evidence, be discounted because the Defendant was not paying all or nearly all of these bank disbursements to the Plaintiffs. Secondly, the Plaintiffs intimated that the Defen-

dant's assurances of forthcoming payments wrongly induced them to extend further credit to the Defendant. These arguments, however, must be rejected—the former because the Defendant still managed to pay a significant portion of his available funds to the Plaintiffs; the latter argument because if accepted, almost all debts in bankruptcy would become nondischargeable obligations as all voluntary creditors are induced, to some extent, to extend credit by a debtor's promise to pay. Therefore, in the absence of more credible evidence of fraud, the Court cannot find that the Plaintiffs have met their requisite burden under 11 U.S.C. § 523(a)(2)(A).

Accordingly, it is

**ORDERED** that the obligation of the Defendant, Billy Joe Patrick, to the Plaintiffs, Bernard Lumber Co., Inc. and B & W Pallet and Lumber Co., Inc., be, and is hereby, determined to be a DISCHARGEABLE DEBT.