## In re Michael BLOOMFIELD, Debtor.

### Joy Binger, Plaintiff,

### v.

### Michael Bloomfield, et al., Defendants.

### Nos. 02–3166, 01–35270.

United States Bankruptcy Court, N.D. Ohio.

Jan. 15, 2003.

William L. Swope, Findlay, OH, for Joy Binger.

Patterson W. Higgins, Findlay, OH, for Michael L. Bloomfield.

### *DECISION AND ORDER*

RICHARD L. SPEER, Bankruptcy Judge.

The cause comes before the Court after a Trial on the Plaintiff's Complaint to determine the dischargeability of a debt. The Plaintiff brings her Complaint to determine dischargeability pursuant to 11 U.S.C. § 523(a)(2)(A) which excepts from discharge those debts which arise from a debtor's fraudulent actions. The Plaintiff's allegation of fraud stems from the Defendant's failure to pay for certain screen printing services that the Plaintiff performed on a large number of sweatshirts. At the Trial, only the Plaintiff and the Defendant testified. From this testimony, and from examining the other evidence presented in this case, it is clear that the following facts are not in dispute.

The Plaintiff, for the past fourteen years, has been in the business of screen printing shirts. On October 1, 2001, the Defendant, on behalf of his son who is employed with the Toledo Naval Reserve, approached the Plaintiff about screen printing shirts for an upcoming football game between the University of Toledo and the U.S. Naval Academy. An agreement was then reached between the Parties whereby the Plaintiff would screen print approximately 150 shirts. As a part of this Agreement, the Defendant was responsible for supplying the shirts. Additionally, given time constraints, the Parties agreed that this would be a rush job.

On October 23, 2001, the Plaintiff, shortly after receiving the necessary shirts and artwork, completed the screen printing job at which time the Defendant personally picked up the finished product. One day prior, the Plaintiff issued an invoice to the Defendant for $1,136.00. The terms of this invoice stated:

> PAYABLE UPON RECEIPT OF THIS INVOICE. A SERVICE CHARGE OF 1 ½% Per Month (18% Per Annum) Will be Charged On All Past Due Accounts Over 30 Days.

(Plaintiff's Exhibit # 4). The Defendant, however, has never made any payments on this invoice.

In contrast, the Toledo Naval Reserve, issued checks to the Defendant, including a check for $1,705.00 dated October 24, 2001, to cover the cost of both the shirts and the screen printing. (Plaintiff's Exhibit # 2). As it relates to these payments, the evidence produced in this case shows that the Defendant stood to make a profit of approximately $1,000.00 dollars for his efforts in supplying the Toledo Naval Reserve with the shirts at issue in this case. Notwithstanding, the Defendant, although he occasionally engages in minor business endeavors, is not typically involved in this type of business activity.

At the time the above events were taking place, both the Defendant and his wife were under the protection of this Court, having filed, on August 23, 2001, a petition for relief under Chapter 13 of the United States Bankruptcy Code. On January 31, 2002, however, the Defendant converted his case to a liquidating bankruptcy under Chapter 7; the underlying basis for this conversion stems from the unexpected death of the Defendant's wife, which in turn rendered the Defendant's proposed plan of reorganization no longer feasible. At the time of this conversion, the Defendant listed three additional creditors: a debt of $1,136.00 to the Plaintiff; a debt of $6,000.00 to a funeral home; and a small debt for an overhead door for $200.00.

As it pertains to the circumstances surrounding the untimely death of the Defendant's wife, the facts of this case revealed

this particular information: (1) the Defendant's wife became ill shortly after she and the Defendant filed their Chapter 13 petition; (2) from October 7 thru October 23 of 2001, the Defendant's wife underwent, on an outpatient basis, numerous medical tests; (3) on November 23, 2001, the Defendant's wife was admitted to the hospital for two or three days; (4) on December 4, 2001, the Defendant's wife underwent surgery; (5) on December 17, 2001, the Defendant's wife died very unexpectedly at work.

In addition to the above course of events, the Court, after having had the opportunity to observe the demeanor of the Plaintiff and the Defendant, makes the following findings of fact in accordance with Bankruptcy Rule 7052:

-It is the Plaintiff's normal business practice to require a customer, such as the Defendant, to (1) place a 50% deposit and (2) render full payment upon completion of an order. In this particular occasion, however, the Plaintiff failed to abide by this business practice because the shirts were for a governmental organization.

-The Defendant never called the Plaintiff regarding payment of the shirts. The Plaintiff, however, called the Defendant on several occasions regarding payment. During these conversations, the Defendant told the Plaintiff that he had not yet received payment from the Toledo Naval Reserve. The last of these conversations took place on January 23, 2002, after which time the Plaintiff, upon personally contacting the Toledo Naval Reserve, was informed that payment for the screen printing had been made to the Defendant back in October of 2001.

-At the time the Plaintiff and the Defendant entered into their business transaction, the Defendant never made any representation that he was currently in a Chapter 13 bankruptcy.

-When ordering the shirts, the Defendant never signed on behalf of the Toledo Naval Reserve; nor did the Defendant ever represent that the Plaintiff would receive payment for her services directly from the Toledo Naval Reserve. In addition, the Plaintiff never, at the time the Parties' agreement was reached, contacted the Toledo Naval Reserve regarding how payment was to be made.

-The Defendant has medical insurance through his place of employment. At his employment, the Defendant makes approximately $40,000.00 per year.

## LEGAL ANALYSIS

In the instant case, the Plaintiff seeks a finding that her claim against the Defendant is a nondischargeable debt under 11 U.S.C. § 523(a)(2)(A). Pursuant to 28 U.S.C. § 157(b)(2)(I), this type of action is deemed a core proceeding over which this Court has been conferred with the jurisdictional authority to enter final orders. 28 U.S.C. § 1334.

Section 523(a)(2)(A) of the Bankruptcy Code implements the long-standing bankruptcy policy that only those debts which are honestly incurred are entitled to the benefits of a bankruptcy discharge. *FTC v. Austin (In re Austin)*, 138 B.R. 898, 903 (Bankr.N.D.Ill.1992). The actual language of this section provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a

statement respecting the debtor's or an insider's financial condition[.]

The party seeking to invoke this exception to discharge, bears the burden to establish its applicability by a preponderance of the evidence. *Rembert v. AT & T Universal Card Servs., Inc. (In re Rembert)*, 141 F.3d 277, 281 (6th Cir.1998). In order to establish the applicability of § 523(a)(2)(A), the following elements must be met: (1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss. *Id.* at 280–81. As it applies to this standard, the focus in this case is clearly on the middle two elements: whether the Defendant acted with requisite intent to deceive the Plaintiff; and whether the Plaintiff was justifiable in her reliance upon the Defendant's misrepresentations. For purposes of this analysis, the Court will begin by looking at whether the Defendant acted with requisite intent to defraud.

■ In cases such as this where a debtor obtains goods or services on credit, a debtor will be found to have acted with the requisite intent to deceive a creditor when, at the time the debt was incurred, it is established that the debtor never had any intention of repaying the debt. *Clyde–Findlay Area Cr. Union v. Burwell (In re Burwell)*, 276 B.R. 851, 854 (Bankr. N.D.Ohio 2002). As it applies to this inquiry, the Sixth Circuit Court of Appeals has held that a debtor's intent must be measured by a subjective standard. *In re Rembert*, 141 F.3d at 281. However, because rarely, if ever, will a debtor admit to acting with the intent to defraud, circumstantial evidence may be introduced concerning the debtor's state of mind at the

time of the alleged fraud. Such evidence may include not only information relating to the debtor's conduct at the time of the representations, but may also include evidence relating to a debtor's subsequent conduct, to the extent that such conduct provides an indication as to the debtor's state of mind at the time of the actionable representations. *Bernard Lumber Co. v. Patrick (In re Patrick)*, 265 B.R. 913, 916 (Bankr.N.D.Ohio 2001). Finally, once such evidence is produced, a bankruptcy court is then to consider whether the circumstances, as viewed in the aggregate, present a picture of deceptive conduct by the debtor which indicates an intent to deceive the creditor. *Id.* at 916–17.

■ In looking at the circumstances in this particular case, the first thing that is notice is that the timing of events is highly suspect. Of particular concern to the Court is the fact that just one day after picking up the shirts and just two days after the Plaintiff issued her invoice, the Defendant received the funds necessary to pay the Plaintiff. In this Court's view, the contemporaneous occurrence of these events is very indicative of a person who did not intend to actually repay their debt. Further, revealing in this regard is the fact that nothing in this case even remotely suggests that it would have been difficult for the Defendant to have segregated, for the Plaintiff's benefit, the funds he received from the Toledo Naval Reserve. For example, the Defendant does not operate a business of any significance in which funds could have easily become commingled. Similarly, as the Defendant had medical insurance at the time of his wife's illness, there is nothing in this case which indicates that funds originally earmarked to pay the Plaintiff were erroneously applied to medical bills. In fact, the Defendant, upon converting his case to Chapter

7, did not even list any medical bills incurred by his wife.

In addition to the timing of events in this case, the Court also finds a couple of aspects of the Defendant's conduct toward the Plaintiff especially troubling. First, whenever contacted by the Plaintiff, the Defendant blatantly misrepresented the truth by telling the Plaintiff that he had not yet received payment from the Toledo Naval Reserve. Along the same line, the Defendant, after receiving the shirts, never once attempted to contact the Plaintiff regarding payment. Thus, given these considerations in conjuncture with the suspicious timing of events, it is clear that the Plaintiff has established a prima facie case of fraudulent conduct under § 523(a)(2)(A). The burden therefore now switches to the Defendant to put forth a credible non-fraudulent explanation for his actions.

The Defendant's defense to the Plaintiff's allegation of fraud centers around the unfortunate circumstances surrounding the death of his wife. This defense is summarized by the following statement made in the Defendant's PreTrial Memorandum to the Court:

[The Defendant's] intention was to pay the Plaintiff however, commencing the first part of November his wife got ill requiring missed work, hospitalization and numerous doctors visits. Defendant's whole concern was his wife's health problems. His wife died on December 17, 2001. Because of this death [the Defendant] was forced to convert to a Chapter 7 Bankruptcy. His intent when he contracted with the Plaintiff was to pay her bill however due to unexpected circumstances he had to Convert from a 13 to a Chapter 7.

As it pertains to the above defense, the Court heavily sympathizes with the Defendant's loss; the death of a spouse is, without question, one of the most difficult things any person must endure. Nevertheless, when a defendant, in an action under § 523(a)(2)(A), claims that their emotional state rendered them incapable of performing their financial obligations, the severity of the stress experienced by the defendant must be imminent and severe. To hold otherwise, would potentially render § 523(a)(2) a nullity as most people could, contemporaneous with a fraudulent action, legitimately point to a stressful event in their lives. In this respect, the Court, while not questioning that the Defendant's mind was for a period of time preoccupied with more pressing issues than paying the Plaintiff, finds that there are certain inherent weaknesses with the Defendant's position.

To begin with, the Defendant admits that his wife's death on December 17th of 2001 was very unexpected. Thus, while the business transaction between the Parties was taking place,—essentially from the dates of October 1st to October 24th— there was no reason for the Defendant to suspect that his wife was suffering from a terminal illness. This is especially true considering that at the time the Defendant received the check from the Toledo Naval Reserves, the Defendant's wife had not yet been admitted to the hospital or even had surgery, but was instead merely having tests done on an outpatient basis.

However even more importantly, the Defendant's argument relating to his stressful situation is essentially self-defeating. This is because just prior to receiving payment from the Toledo Naval Reserves, the emotional strain the Defendant was experiencing on account of his wife's illness did not prevent him from conducting his business transaction with the Plaintiff. For example, the Defendant, despite his wife's health difficulties, was able to perform these tasks: (1) take an order in early October from his son and the Toledo Naval Reserve for the customizing of over

150 shirts, (2) place an order for over 150 shirts with a supplier; (3) thereafter, see to it that the supplier's shirts were delivered to the Plaintiff for a rush screen printing job; and (4) finally pick up the shirts from the Plaintiff and then making sure that the shirts were delivered to the Toledo Naval Reserve. On the other hand, while performing these tasks, the Defendant wants this Court to believe that he could not see to it that the funds received from the Toledo Naval Reserve were turned over to the Plaintiff. Finally, it is also noted that during the course of events, the Defendant was astute enough to ensure himself a generous profit for his efforts.

In an effort to explain the above conduct, the Defendant put forth to the Court that, according to the Plaintiff's invoice, payment was not due until 30 days thereafter, and that at the expiration of this time period, his wife's health situation had clearly deteriorated. However, the Court cannot accept this argument as nothing in the Plaintiff's invoice states that the Defendant had thirty days to make payment to the Plaintiff. In fact, the invoice is very clear: the bill must be payed upon receipt of the invoice. Thus, given the above considerations, the Court simply does not find it credible that the emotional stress the Defendant was experiencing on account of his wife's illness, was sufficiently debilitating so as to excuse the Defendant from paying the Plaintiff. As such, the Defendant has failed to refute the Plaintiff's prima facie case of fraudulent intent under the second requirement of the test set forth in § 523(a)(2)(A).

■ The final issue to address is whether the Plaintiff actually relied upon those representations made by the Defendant. In *Field v. Mans*, the Supreme Court of the United States held that the standard of reliance needed under § 523(a)(2)(A) is that of justifiable, as op-

posed to the higher standard of reasonable reliance. 516 U.S. 59, 74–75, 116 S.Ct. 437, 446, 133 L.Ed.2d 351 (1995). The difference between the two being that the former is a subjective standard, whereas the latter is an objective standard. In *Eugene Parks Law Corporation Defined Benefit Pension Plan v. Kirsh (In re Kirsh)*, which was favorably cited by the Supreme Court in *Field v. Mans,* the Ninth Circuit Court of Appeals explained justifiable reliance as this:

the standard is not that of the average reasonable person. It is a more subjective standard which takes into account the knowledge and relationship of the parties themselves. Thus, a person of normal intelligence, experience and education may not put faith in representations which any such normal person would recognize at once as preposterous. At the same time, the standard does protect the ignorant, the gullible, and the dimwitted, for no rogue should enjoy his ill-gotten plunder for the simple reason that his victim is by chance a fool. On the other hand, if a person does have special knowledge, experience and competence he may not be permitted to rely on representations that an ordinary person would properly accept. In other words, while reasonableness of behavior is a factor in the mix, it is only a factor. The more precise question is whether the person who claims to have been gulled was justified in relying.

973 F.2d 1454, 1459 (9th Cir.1992) (internal citations and quotations omitted).

■ As the above standard pertains to this case, it easily follows that the Plaintiff justifiably relied upon the Defendant's representations. In this regard, and while it did not necessarily conform to the Plaintiff's standard business practice, there does not seem anything unusual about permitting a customer, such as the Defendant, to pay for a service shortly after it is

completed. This is especially true in this case considering that the shirts were for the Toledo Naval Reserve, an institution which would have presumably had the funds available to pay (and in fact did pay) the Defendant. In addition, it is noted that the Defendant never informed the Plaintiff that he was in a Chapter 13 bankruptcy, thus there was no reason for the Plaintiff to suspect that the Defendant was in financial trouble.

Therefore, for all of the reasons stated herein, the Court finds that the Plaintiff has sustained her burden with respect to her cause of action under 11 U.S.C. § 523(a)(2)(A). In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

**ORDERED** that the obligation of the Defendant, Michael Bloomfield, to the Plaintiff, Joy Binger, be, and is hereby, determined to be a NONDISCHARGE-ABLE DEBT.