**In re Penny STEPHENS, Debtor.**

**Universal Bank, Plaintiff,**

v.

**Penny Stephens, Defendant.**

**Nos. 00–3284, 00–33059.**

United States Bankruptcy Court,
N.D. Ohio.

July 23, 2003.

Bruce R Freedman, Akron, OH, for Plaintiff.

Richard J Szczepaniak, Toledo, OH, for Defendant.

## DECISION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court after a Trial on the Complaint of the Plaintiff/Creditor, Universal Bank, to determine the dischargeability of a debt. The Plaintiff brings its Complaint pursuant to 11 U.S.C. § 523(a)(2)(A), which generally excludes from the scope of a bankruptcy discharge those debts incurred by fraud. The conduct allegedly giving rise to this statutory exception to discharge involves the Defendant/Debtor's purported misuse of a credit card issued by the Plaintiff. Also participating as a plaintiff at the Trial was Citibank, who similarly alleged, in a separate complaint, that the Debtor improperly incurred debts on a credit card it had issued. As the issues involved in both these adversary cases concern common questions of fact and law, they will be addressed together in this Decision.

## DISCUSSION

The Plaintiff's Complaint to determine dischargeability is brought pursuant to § 523(a)(2)(A) of the Bankruptcy Code which provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]

An action brought under this section is deemed a "core proceedings" over which this Court has the jurisdictional authority to enter final orders. 28 U.S.C. § 157(b)(2)(I).

■ It is well-settled that a cause of action brought under § 523(a)(2)(A) requires that the movant establish, by at least a preponderance of the evidence, the existence of the following elements which are derived directly from the common law elements for fraud: (1) the debtor made false representations; (2) the debtor knew such representations to be false at the time they were made; (3) the representations were made with the intent to deceive the creditor; (4) the creditor relied on the representations; and (5) the creditor's loss was the proximate result of the misrepresentation having been made. *Coman v. Phillips (In re Phillips)*, 804 F.2d 930, 932 (6th Cir.1986); *Bernard Lumber Co. v. Patrick (In re Patrick)*, 265 B.R. 913, 916 (Bankr.N.D.Ohio 2001). As it concerns the applicability of these requirements, the Court makes the following findings of fact in accordance with Bankruptcy Rule 7052:

The Debtor was divorced in 1998. One child was born as issue from this marriage. In 1999, the Debtor and her ex-husband fought a custody battle over this child, with the Debtor eventually prevailing.

In December of 1999, the Debtor gave birth to a second child. At approximately this same time, the father of the child, with whom the Debtor was living, stopped contributing to the household income.

In January of 2000, the Debtor's father passed away.

At the end of March of 2000, the Debtor was laid off her job.

By July of 2000, the Debtor had a driving school in operation. This business eventually failed.

Universal Bank is the creditor of an AT & T card issued to the Debtor within the past few years. Similarly, Citibank is-

sued a card by the same name to the Debtor within the past few years.

During the months of February and March of the year 2000, the Debtor made three significant transactions on her AT & T credit card: (1) $4,251.68 to a Lumber Company on February 2; (2) $159.90 to an Electronics Store on March 14, 2000; and (3) $580.00 to Circuit City on March 25. Before the time these transactions occurred, the Debtor had a zero balance on this account with a credit limit of $5,000.00. After incurring these charges, the Debtor's available credit had been reduced to only 47 cents. (Plaintiff's Ex.# 1).

During the months of February and March of the year 2000, the Debtor made four significant transactions on her Citibank Credit Card: (1) $1,019.92 to Office Max on February 6; (2) $474.71 to Meijer Inc. on February 6; (3) $955.00 to Circuit City on March 25; and (4) $605.02 to Kohl's Department Store on March 25. At the time these charges were incurred, the Debtor had a total credit line of $10,500.00 of which $8,915.41 had already been used. After conducting these transactions, the Debtor, although making two payments totaling $341.00, had exceed her credit limit by over $100.00. (Plaintiff's Ex. # 2). The above credit card charges were made to purchase products used in the Debtor's driving school business.—e.g., computer equipment and an outdoor building. In addition, some of the above charges were incurred to purchase necessities for the Debtor and her children.

In June of 2000, the Debtor first saw an attorney to discuss her financial problems. On July 24, 2000, the Debtor filed a petition in this Court for relief under Chapter 7 of the United States Bankruptcy Code. At the time of filing, the Debtor had approximately $67,000.00 in other credit card debt. In total, the Debtor listed in her petition assets of $86,270.00 and liabilities of $160,403.00. In her petition, the Debtor also disclosed an annual gross income of $22,000.00 for the year 1998, and $12,000.00 for the year 1999. In addition, the Debtor disclosed that at the time of filing she had a monthly income of just over $2,000.00.

Based upon the above facts, and as is typical in many cases brought under § 523(a)(2)(A), the focus in the present case is on whether the Debtor acted with the requisite intent to defraud and whether the Plaintiff was justified in relying on those representations made by the Debtor. For purposes of this Decision, the Court will begin its analysis with whether the Debtor acted with the requisite intent to defraud the Plaintiff.

Central to the concept of fraud under § 523(a)(2)(A) is that the notion that the debtor must have acted with the intent to harm or deceive the injured party. This requirement, however, has created some difficulty in a situation, such as this, where a credit card is utilized. This difficulty arises because, unlike typical credit transactions which involve a direct transaction between two parties, credit card transactions normally involve three parties: (1) the debtor/card holder; (2) the creditor/card issuer; and (3) the merchant who honors the credit card. The existence of this arrangement, thus, makes it difficult for the creditor to establish that the debtor made an intentional misrepresentation as normally the creditor has had no direct contact with the debtor. *Citibank (South Dakota), N.A. v. Eashai (In re Eashai)*, 87 F.3d 1082, 1087 (9th Cir.1996).

To overcome this difficulty, courts have applied various legal theories to credit card transactions under § 523(a)(2)(A). Of the legal theories applied to credit card

transactions, this Court originally adopted the theory known as the "implied representation" test. *Mid–American National Bank & Trust Co. v. Higgs (In re Higgs),* 39 B.R. 181, 184 (Bankr.N.D.Ohio 1984); *First Deposit Nat'l Bank v. Gonzales (In re Gonzales),* 213 B.R. 990, 993 (Bankr. N.D.Ohio 1996); *Fifth–Third Bank of Northwest Ohio, N.A. v. Spitler (In re Spitler),* 229 B.R. 1, 4 (Bankr.N.D.Ohio 1998); *Chase Manhattan Bank v. Robinson (In re Robinson),* 238 B.R. 681, 685 (Bankr.N.D.Ohio 1999); *AT & T Universal Bank v. Pennell (In re Pennell),* 238 B.R. 737, 741 (Bankr.N.D.Ohio 1999). This theory, which has been very widely adopted, holds that a credit card holder impliedly represents, upon using a credit card, that he has both the ability and the intention of paying for the goods and/or services that are obtained on credit. *Sears Roebuck & Co. v. Faulk (In re Faulk),* 69 B.R. 743, 752 (Bankr.N.D.Ind.1986); *Maas Bros., Inc. v. Ratajczak,* 5 B.R. 583, 586 (Bankr. M.D.Fla.1980).

As might be expect, a very important, and sometimes determinative consideration under the "implied representation" test, concerns the extent of the debtor's solvency at the time of the alleged fraudulent transaction. *ITT Fin. Serv. v. Hulbert (In re Hulbert),* 150 B.R. 169, 173 (Bankr.S.D.Tex.1993). Thus, if this Court were to apply this Test to the facts of this case, the Debtor's substantial insolvency at the time of the credit card transactions would become a primary focus of this Court's analysis. Specifically, a serious question would arise given that at the time she was incurring well over Eight Thousand dollars ($8,000.00) in debt on her AT & T and Citibank credit cards, the Debtor, despite having an annual income of only Twenty Thousand dollars ($20,000.00), had approximately Sixty-seven Thousand dollars ($67,000.00) in other unsecured consumer debt. As a result, it seems unlikely that there was any realistic possibility that the Debtor would have been able to service her loan obligations on her AT & T and Citibank credit cards.

■ The application of the "implied representation" theory, however, was later overruled by the Sixth Circuit Court of Appeals in *Rembert v. AT & T Universal Card Servs., Inc. (In re Rembert),* wherein it was stated:

> We believe that the representation made by the cardholder in a credit card transaction is not that he has an ability to repay the debt; it is that he has an intention to repay. To measure a debtor's intention to repay by her ability to do so, without more, would be contrary to one of the main reasons consumers use credit cards: because they often lack the ability to pay in full at the time they desire credit. Further, the language of 523(a)(2)(A) expressly prohibits using a statement respecting the debtor's or an insider's financial condition as a basis for fraud.

> \* \* \* \* \* \*

> Thus, we hold that the proper inquiry to determine a debtor's fraudulent intent is whether the debtor subjectively intended to repay the debt.

141 F.3d 277, 281 (6th Cir.1998). (internal quotations and citations omitted). Thus, as this language clearly shows, the Sixth Circuit's application of § 523(a)(2)(A) to credit card debts completely discounts—in contravention to the "implied representation" theory—the debtor's present ability to pay the debt, and instead focuses solely on the debtor's subjective state of mind at the time of the alleged fraud.[1]

1. In doing so, the Sixth Circuit has ostensibly adopted what has become to be known as the

■ Nevertheless, a debtor will rarely, if ever, admit to acting with the requisite intent to defraud; thus, it is still necessary for a court to look to circumstantial evidence involving the traditional indicia of fraud—e.g., the suspicious timing of events. *Binger v. Bloomfield (In re Bloomfield)*, 293 B.R. 148, 154 (Bankr. N.D.Ohio 2003). For example, and although not dispositive, substantial insolvency at the time of the alleged fraudulent transaction is still strong circumstantial evidence as to the debtor's state of mind. In evaluating the circumstantial evidence presented in a case, the Sixth Circuit, however, cautioned against "factor-counting," instead holding, "[w]hat courts need to do is determine whether all the evidence leads to the conclusion that it is more probable than not that the debtor had the requisite fraudulent intent." *Id.* at 282 *citing Chase Manhattan Bank v. Murphy (In re Murphy)*, 190 B.R. 327, 332 (Bankr.N.D.Ill. 1995). As a result, in cases such as this where a debtor is substantially insolvent at the time of the alleged fraudulent transaction, fraudulent intent is not to be presumed, but instead, a court must still look to whether additional circumstances exist concerning whether the debtor, at the time the obligation was incurred, intended to pay the debt. *Chase Manhattan Bank v. Alnajjar (In re Alnajjar)*, 276 B.R. 844 (Bankr.N.D.Ohio 2002).

■ All the same, even in going beyond the Debtor's substantial insolvency many attendant circumstances still cause this Court to question the Debtor's supposed benign motives in incurring the credit card debts at issue. To begin with, in a relatively short period of time, the Debtor charged rather large amounts on her credit cards; specifically, a total of Eight Thousand Forty–Six and 23/100 dollars ($8,046.23). In doing so, the Debtor on her AT & T card reached her credit limit and on the CitiBank card the Debtor exceeded her credit limit. Standing alone such conduct is, to say the least, highly irregular, especially given the Debtor's rather modest means.

In addition, and even more troubling from the Court's perspective, is the Debtor seeing an attorney regarding her insolvency just three months after incurring her significant credit card charges. Thus, in the absence of a significant intervening event, the Debtor had to be aware that at the time the transactions at issue occurred in this case, her financial situation was precarious at best. In this regard, the Debtor, to help explain her conduct, brought to the Court's attention certain difficulties that had occurred in her life which, according to her, had strained her both emotionally and financially—e.g., a custody battle with her ex-husband, the death of her father with whom she was close, and the temporary loss of her job. The weakness with this argument, however, is that such events either occurred before or during the time the charges were

"common law" test. The other tests applied to credit card debts under 523(a)(2)(A) are the "assumption of the risk" theory and the "totality of the circumstances" theory. Under the "assumption of the risk" theory, a credit card user will only be found to have intentionally made a false representation when three conditions are met: (1) the credit card has been revoked; (2) revocation of the card has been communicated to the card holder; and (3) the card holder continues to use the card. *First Nat'l Bank v. Roddenberry*, 701 F.2d 927, 932–33 (11th Cir.1983). This approach, which very often results in the dischargeability of credit card debts, has not been widely adopted. The "totality of the circumstances" theory holds that a debtor's intent to repay a debt must be inferred from the totality of the circumstances. Under this test, courts use a list of objective factors (i.e., badges of fraud) to determine if a debtor acted in a fraudulent manner. *Chevy Chase Bank FSB v. Kukuk (In re Kukuk)*, 225 B.R. 778, 786 (10th Cir. BAP 1998).

being made, and thus they do not fully account for the Debtor's almost complete failure to make any remuneration on these debts.

In addition to the above justifications, the Debtor, to refute any inference of fraudulent intent, raised two overall points. First, the Debtor called to the Court's attention the fact that some of her credit card charges were used to buy necessities for herself and her children. Second, the Debtor maintains that many of the debts at issue in this case were incurred to start her business—i.e., the driving school—which, if it had been successful, would have enabled her to pay back her debts.

■ With respect to the Debtor's first argument, the Court must reject it outright. This is because the manner in which funds are spent does not, on that basis alone, pertain to the issue of fraudulent intent. In specific terms, while it may not seem as culpable, a debtor who, with no intent of repaying the debt, purchases necessities such as food is no less liable for fraudulent intent than a debtor who purchases luxury items.

As it concerns the Debtor's second argument, the Court certainly agrees that many debts are incurred in the hope that the proceeds obtained therefrom can be utilized to generate a future stream of income to pay the debt; this is, after all, the basis of business. However, the key here is not that a debtor desires a future stream of income, but rather that circumstances show that the debtor intended to pay the debt from the future stream of income. In this regard, the Court has certain difficulties with the Debtor's position.

First, the veracity of the Debtor's position is weakened by the fact that no plan or similar type of corroborating evidence was presented to the Court to demonstrate how the driving school was going to enable

her to service her debt obligations to AT & T and Citibank. In particular, the Court was not presented with any evidence concerning anticipated earnings of the business. Second, the operation of the Debtor's driving school business in no way seems appreciably intertwined with the payment of her credit card debts. Most noticeably, the Debtor continued to operate her driving school business even after she filed for bankruptcy. Similarly, in the short time between incurring her credit card obligations and then filing for bankruptcy, the Debtor did not make any payments on her AT & T card and only made a couple of minimal payments on her Citibank card.

Accordingly, for all the reasons stated above, the Court finds that when looking at the evidence presented in this case as a whole, it is more probable than not that at the time the credit card obligations at issue were incurred, the Debtor had no real intention of repaying such obligations. As a result, the Plaintiff has sustained its burden of showing that the Debtor made false representations with the intent to deceive. The Court will thus now turn to the next issue concerning whether the Plaintiff relied on the Debtor's representations.

■ Any analysis of reliance must necessarily begin with the Supreme Court's decision in *Field v. Mans*, where it was held that a creditor's reliance under § 523(a)(2)(A) must be "justifiable" as opposed to the higher standard of "reasonable." 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995). A key attribute to this standard is that it is subjective, and thus looks solely to the individual characteristics of the creditor. Although relatively straightforward in most situations, the application of this Test has, like with the issue of intent, created difficulties in

the context of credit card transactions. On the one side are those cases which hold that, in the absence of any "red flags," a simple cursory investigation such as a credit check is sufficient to satisfy justifiable reliance standard of § 523(a)(2)(A). *AT & T Universal Card Services Corp. v. Feld (In re Feld)*, 203 B.R. 360 at 370 (Bankr.E.D.Pa.1996); *F.C.C. National Bank v. Cacciatore (In re Cacciatore)*, 209 B.R. 609, 616 (Bankr.E.D.N.Y.1997). On the other end are those cases which hold reliance is only justifiable if the credit card company conducted a very thorough and complete investigation of the debtor. *Providian Bancorp. v. Stockard (In re Stockard)*, 216 B.R. 237, 243 (Bankr.M.D.Tenn. 1997); *Star Bank, N.A. v. Stearns (In re Stearns)*, 241 B.R. 611, 628 (Bankr. D.Minn.1999). In addition, some courts have sought to shape a rule to reflect the unique circumstances of the situation. For example, in *AT & T Universal Card Services v. Ellingsworth (In re Ellingsworth)*, it was held that, as a matter of law, a credit card company cannot justifiably rely on an unsolicited preapproved credit card application. 212 B.R. 326 at 338–339 (Bankr.W.D.Mo.1997); *see also Chevy Chase Bank, FSB v. Briese (In re Briese)*, 196 B.R. 440 at 453–454 (Bankr.W.D.Wis. 1996).

■ While each of these approaches has merit, the Supreme Court's decision in *Field* seems to envision a more fact intensive approach that takes into consideration the unique circumstances of each case. Of particular noteworthiness, the Supreme Court explained that justifiable reliance for purposes of § 523(a)(2)(A) "is a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than the application of a community standard of conduct to all cases." *Id.* at 70–71, 116 S.Ct. at 444 (internal quotations and citation omitted). Thus, while a simple credit check may suffice in large number of circumstances, more may be required in the case of someone, such as a student, who has essentially no credit history. Similarly, a higher degree of investigation may be required when a creditor raises the credit limit on a card that already carries with it a significant amount of debt; or, as appears to be the situation here, when a debtor who already has a significant degree of debt is offered an additional credit card. On the other hand, a cursory credit check, or possibly no check at all would most likely be sufficient in the situation where there is already an established relationship between the Parties.

■ Nevertheless, the *Field* decision does make one thing clear: the reliance requirement of § 523(a)(2)(A) is not to be ignored. *See also Manufacturer's Hanover Trust Co. v. Ward (In re Ward)*, 857 F.2d 1082, 1084 (6th Cir.1988) (although applying a reasonable standard to § 523(a)(2)(A), this decision makes it clear that reliance cannot be simply ignored). In particular, the Supreme Court was careful to point out that justifiable reliance is a higher standard than just actual reliance. In particular, it was stated that "a person is required to use his senses, and cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation." *Id.* (internal quotation and citation omitted). In addition, the Supreme Court also made it clear that the reasonableness of the reliance should not be completely discounted:

> As for the reasonableness of reliance, our reading of the Act does not leave reasonableness irrelevant, for the greater the distance between the reliance claimed and the limits of the reasonable, the greater the doubt about reliance in

fact. Naifs may recover, at common law and in bankruptcy, but lots of creditors are not at all naive. The subjectiveness of justifiability cuts both ways, and reasonableness goes to the probability of actual reliance.

*Id.* at 76, 116 S.Ct. at 446.

■ The record in this case, however, is completely devoid of any possible inference of reliance. For example, there was simply no evidence that the Plaintiff, despite her large amount of unsecured debt, even conducted a credit check of the Debtor. Also, no evidence of the Debtor's payment history was introduced. In fact, the only evidence put forth concerning reliance was testimony to the effect that it is the Plaintiff's view that the foundation of having a credit card is that its member will repay the debt. However, as this is the basis of all commercial transactions, such a statement is insufficient to create a finding of justifiable reliance.

Accordingly, as the creditor bears the burden of establishing justifiable reliance, the Court is constrained to find that the Plaintiff has not satisfied its burden under § 523(a)(2)(A). Accordingly, despite the fact that the obligations set forth herein were fraudulently incurred, the Defendant is still entitled to receive a discharge of these obligations. In reaching this Decision, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

**ORDERED** that the credit card obligation of the Defendant, Penny Stephens, to the Plaintiff, Universal Bank, be, and is hereby, determined to be a DISCHARGEABLE DEBT.

