**In re David/Michelle TELLAM,**
**Debtors.**

**John Rust, Plaintiff,**

v.

**David Tellam, et al., Defendants.**

**No. 04–3329.**

United States Bankruptcy Court,
N.D. Ohio.

March 3, 2005.

Louis S. Kovacs, Gallon and Takacs Co., Toledo, OH, for Debtors.

Patricia A. Kovacs, Toledo, OH, trustee.

## DECISION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court after a Trial on the Plaintiff's Complaint to Determine Dischargeability. Pursuant to his Complaint, the Plaintiff seeks a determination that those monies owed by the Defendants for legal services rendered should not be afforded the protections of the Bankruptcy Discharge Injunction. The facts giving rise to this controversy are set forth immediately below; and shall constitute, in accordance with Bankruptcy Rule 7052, this Court's findings of fact.

## FACTS

In the summer of the year 2003, the Defendant/Debtor, Michelle Tellam, retained the legal services of the Plaintiff, John Rust, to help her execute an uncontested divorce. As compensation for his legal services, the Plaintiff advertised a flat fee of $350.00, with this rate forming, at least in part, the basis for Mrs. Tellam retaining the Plaintiff as her legal counsel.

In January of 2004, the Plaintiff represented Mrs. Tellam at a court hearing. At the conclusion of the hearing, Mrs. Tellam was awarded certain costs and fees from her then present husband. The Plaintiff then offered and the Defendants both agreed that such funds would be used to pay the Plaintiff's legal fees. At this time, both of the Defendants made it clear to the Plaintiff that they needed to have Mrs. Tellam's divorce expedited as they planned to marry in the near future. For expediting the process, the Plaintiff charged the

Defendants fees beyond that advertised—approximately $500.00. These additional legal fees have never been paid, and form the basis for the Plaintiff's complaint.

On May 18, 2004, the Defendants/Debtors filed a petition in this Court for relief under Chapter 7 of the United States Bankruptcy Code. In their petition, the Defendants listed $89,828.47 in total unsecured debt. Approximately one month prior, the Debtors first sought out the advice of legal counsel regarding their financial difficulties.

## DISCUSSION

An action, such as that brought by the Plaintiff, to determine the dischargeability of a particular debt is deemed a "core proceeding" over which this Court has been conferred with the jurisdictional authority to enter final orders. 28 U.S.C. § 157(b)(2)(I).

 The Plaintiff did not specify under which statutory authority he brings his Complaint to Determine Dischargeability. However, in accordance with Bankruptcy Rule 7015, the Court will amend the Plaintiff's pleading so as to conform with the evidence presented which, based upon the Plaintiff's references to misrepresentations made by both Defendants, asserts a cause of action under 11 U.S.C. § 523(a)(2)(A). This section states:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
>
> > (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
> >
> > (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]

It is the Plaintiff's burden to establish the applicability of this exception to dischargeability by at least a preponderance of the evidence. *Rembert v. AT & T Universal Card Servs., Inc. (In re Rembert),* 141 F.3d 277, 281 (6th Cir.1998)

In opposition to the applicability of § 523(a)(2)(A), the primary issue raised by the Defendants at the Trial concerned the legitimacy of the Plaintiff's claim. In detail, the Defendants put forth that it was their understanding with the Plaintiff that his legal fees would be fully satisfied through their agreement to pay to him those costs and fees awards to Mrs. Tellam from her ex-husband by the state court. In addition, the Defendants put forth that the Plaintiff did not satisfactorily perform the work he had agreed to perform. In response to these arguments, the Plaintiff queried the Court: why would he have agreed to perform extra work for the Defendants—i.e., expedite Mrs. Tellam's divorce—if he was not going to be paid additional fees?

Not unexpectedly, the Parties' direct testimony regarding the existence of an agreement to pay the Plaintiff additional fees involved a swearing contest, with each of the Parties vehement in their recount of the events surrounding the Plaintiff's position that he is entitled to additional legal fees. And problematic from the Court's perspective is that, given their demeanor at the Trial, the Court does not question that each of the Parties truly believe that their account of the events is accurate. Thus, to make a decision in this matter, the Court will resort to other attendant circumstances. And upon review of such attendant circumstances, the Court finds that, when directly compared, the Defendants' position is more in line with the events that transpired.

First, the Plaintiff admitted to the following: (1) his system of organizing his

office is far from exemplary; (2) at or around the time that he was to expedite Mrs. Tellam's divorce process, he took a vacation; and (3) while disagreeing on the issue of full satisfaction, the Plaintiff admitted that he had agreed to accept the state court's award of costs and fees to Mrs. Tellam as payment for his legal services. On the other side, there is no real question that, (1) Mrs. Tellam's uncontested divorce, having lasted over a half a year, took longer than expected; (2) Mrs. Tellam, herself, had to do some of the work in expediting her divorce process; (3) the amount of extra work it took to expedite Mrs. Tellam's divorce process was not great; and (4) Mrs. Tellam was, at least partially, induced to hire the Plaintiff as her legal counsel based upon his representation that he would only charge $350.00 for an uncontested divorce.

▆▆ Taken together, these facts first raise a reasonable doubt as to whether the Plaintiff fully undertook, as agreed, to expedite Mrs. Tellam's divorce process, thereby entitling him to the additional legal fees. But even more important, such facts raise a serious doubt as to whether the Defendants even agreed, in the first place, to pay the Plaintiff for any extra fees. It is black letter law that a contractual obligation,—and thus, by implication, a claim in bankruptcy—will only arise if there exists the mutual assent of the parties; that is, a meeting of the minds. 17 OHIO JUR.3d, Contracts, §§ 15, 16 (2004). It is the Plaintiff's burden to establish the existence of mutual assent. *Nilavar v. Osborn*, 127 Ohio App.3d 1, 11, 711 N.E.2d 726, 733 (1998). And here, given all the circumstances just set forth, there simply exists too large a doubt to justify a finding that this burden has been satisfied. Finally, and firmly tipping the balance in the Defendants' favor, is this evidentiary omission: the Plaintiff was unable to produce any written fee agreement; instead, offering just a billing statement which alone does not establish the existence of any agreement. *Accord Cuyahoga Cty. Bar Assn. v. Hardiman*, 100 Ohio St.3d 260, 263, 798 N.E.2d 369, 373 (2003) ("the use of a written fee agreement is the preferred method of detailing the conditions of an attorney's representation.").

▆▆ However, even if, for argumentative sake, the Defendants had agreed to pay the Plaintiff additional fees, the Plaintiff is not entitled to relief under § 523(a)(2)(A). Under § 523(a)(2)(A), a mere promise to pay a debt does not render the debt nondischargeable; to hold otherwise would severely undercut the bankruptcy discharge. *Citibank (S.D.) N.A. v. Lee (In re Lee)*, 186 B.R. 695, 699 (9th Cir. BAP 1995). Instead, § 523(a)(2)(A) requires fraudulent conduct, which at its core means that, at the time the debt is incurred, the debtor did not have the intention of repaying the debt. As was previously explained by this Court:

> a broken promise to repay a debt, without more, will not sustain a cause of action under § 523(a)(2)(A). Instead, central to the concept of fraud is the existence of scienter which, for purposes of § 523(a)(2)(A), requires that it be shown that at the time the debt was incurred, there existed no intent on the part of the debtor to repay the obligation. This tenet is set forth in the second and third elements of the above § 523(a)(2)(A) test which asks whether the debtor, having present knowledge as to the falsity of the representations, acted with the present intent to deceive the creditor.

*EDM Machine Sales v. Harrison (In re Harrison)*, 301 B.R. 849, 854 (Bankr. N.D.Ohio 2003) (internal citations omitted).

In determining a debtor's intent, this Court, at least in the absence of an admis-

sion, has applied those badges traditionally associated with fraudulent transactions. *See, e.g., Citibank v. Stephens (In re Stephens)*, 302 B.R. 227, 233 (Bankr.N.D.Ohio 2003). One of the most important in this regard is any suspicious timing in the underlying events. *Id.* Under § 523(a)(2)(A), a determination that the timing of events is suspicious will commonly involve looking at the duration between the debtor's promise to pay and the time at which the debtor sought bankruptcy relief, with the latter event frequently taking into account the time at which the debtor first sought out the advice of legal counsel.

As applied here, the facts show that around the month of April 2004, the Defendants first contacted an attorney regarding their financial condition, thereafter filing for bankruptcy relief on May 18, 2004. Thus, with the event in question occurring in January of 2004, at least four months separate any promise to pay on the part of the Defendants with any manifestation of their intent to discharge that promise. While the passage of four months will not, alone, negate any inference of fraud; it does begin to dispel any such inference. And here, when set against these two facts, the passage of four months is sufficient to refute the existence of any fraud on the part of the Defendants:

First, it seems highly unlikely that the Defendants, after four months, would take the drastic step of a bankruptcy filing just to discharge a little over $500.00 in debt. This is all the more true considering that they listed approximately $90,000.00 in total unsecured debt. Put in a different light, in the absence of highly unusual circumstances, it does not follow that a person with a large amount of debt would, four to five months prior to their bankruptcy, be scheming to disavow a debt of only $500.00. Second, it was also shown that the Defendants' financial difficulties stemmed from a confluence of circumstances, not the least of which was a failed business endeavor of the Defendant, Mr. Tellam. It, thus, again does not follow that, at the time the Defendants made their promise to pay the Plaintiff, that they were also contemporaneously intending to break that promise through seeking the protections afforded by the Bankruptcy Code.

Therefore, for all of the reasons stated herein, it is the decision of this Court that the Plaintiff is not entitled to a finding of nondischargeability against the Defendants. In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

***ORDERED*** that any obligation the Defendants/Debtors, David and Michelle Tellam, have to the Plaintiff, John Rust, for prepetition legal services rendered, is hereby determined to be a DISCHARGEABLE DEBT.

It is ***FURTHER ORDERED*** that this Complaint, be, and is hereby, DISMISSED.