# United States Bankruptcy Appellate Panel
**FOR THE EIGHTH CIRCUIT**

_____

No.  05-6010 SI

_____

| | | |
|---|---|---|
| In re: Randall Hugh Church, | * | |
| | * | |
| Debtor. | * | |
| | * | |
| Robert Clauss, | * | Appeal from the United States |
| | * | Bankruptcy Court for the Southern |
| Plaintiff-Appellant, | * | District of Iowa |
| | * | |
| v. | * | |
| | * | |
| Randall Hugh Church, | * | |
| | * | |
| Defendant-Appellee. | * | |

_____

Submitted: July 18, 2005
Filed: July 26, 2005

_____

Before KRESSEL, Chief Judge, FEDERMAN, and MAHONEY, Bankruptcy Judges.

_____

FEDERMAN, Bankruptcy Judge.

Plaintiff Robert Clauss appeals an order of the bankruptcy court[1] finding that Clauss failed to prove that a debt owed him for attorney's fees is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A). We affirm.

_____

[1]The Honorable Lee M. Jackwig, Chief Judge, United States Bankruptcy Court for the Southern District of Iowa.

## FACTUAL BACKGROUND

On April 25, 2002, Clauss agreed to represent Church in modifying a previously entered dissolution decree. Church paid no retainer to Clauss. Church and Clauss, instead, agreed upon a fee of $150 per hour, and Church agreed to pay Clauss $600 per month until the bill was paid in full. On July 16, 2003, Clauss withdrew as Church's attorney, at Church's request. The record indicates that Church authorized Clauss to aggressively pursue issues for which there was little chance for success in the modification proceeding. Indeed, Clauss testified that he soon realized that Church's only intention in pursuing the modification was to harass his former spouse. Clauss stated that because of Church's unreasonable behavior, he incurred substantial attorney's fees. Despite Clauss' concerns about Church's motivation, he turned all of the files over to Church when the relationship ended, thereby releasing his attorney's lien.

At some point, Clauss claims that Church indicated that he was considering bankruptcy, although there is a dispute about when this information became known to Clauss. Clauss testified that Church assured him that, regardless of whether he filed a bankruptcy case, he would not discharge the debt to Clauss, but would pay it in full. Clauss argues that, thereafter, he only continued to provide legal services to Church based on this representation. Church argues that he never made such a statement.

By July of 2003, when Church ended the relationship, he had paid Clauss the agreed upon $600 per month for each of the 15 months of representation. On September 23, 2003, Church filed for bankruptcy relief, and he scheduled a debt to Clauss in the amount of $32,070.00, along with other unsecured debt in the amount of $32,677.82. Church claimed that adverse conditions, including health problems, car repairs, flooding in his apartment, creditors looking to him to pay some of his former wife's debt, being off from work, and reduced income, led to his need to file bankruptcy.

2

Clauss timely filed a complaint to determine the dischargeability of his debt, contending that Church had obtained the benefit of his legal services through false representation, false pretenses, or actual fraud. At the conclusion of the trial the bankruptcy court found that Clauss had failed to sustain his burden of proof as to such cause of action and that any obligation was, therefore, dischargeable. This appeal followed.

## STANDARD OF REVIEW

A bankruptcy appellate panel shall not set aside findings of fact unless clearly erroneous, giving due regard to the opportunity of the bankruptcy court to judge the credibility of the witnesses.[2] We review the legal conclusions of the bankruptcy court *de novo.*[3]

## DISCUSSION

Section 523(a)(2)(A) of the Bankruptcy Code (the Code) excepts a debt from discharge if the debt was obtained by the debtor's misrepresentation:

> (a) A discharge under section 727, 1141, 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–

---

[2] *Gourley v. Usery (In re Usery),* 123 F.3d 1089, 1093 (8th Cir. 1997); *O'Neal v. Southwest Mo. Bank (In re Broadview Lumber Co., Inc.)*, 118 F.3d 1246, 1250 (8th Cir. 1997) (citing *First Nat'l Bank of Olathe, Kansas v. Pontow*, 111 F.3d 604, 609 (8th Cir.1997)). Fed. R. Bankr. P. 8013.

[3] *First Nat'l Bank of Olathe, Kansas v. Pontow (In re Pontow),* 111 F.3d 604, 609 (8th Cir. 1997); *Sholdan v. Dietz (In re Sholdan),* 108 F.3d 886, 888 (8th Cir. 1997). *See also City Bank & Trust Co. v. Vann (In re Vann)*, 67 F.3d 277, 279 (11th Cir. 1995). (construction of 11 U.S.C. § 523(a)(2)(A) given *de novo* review).

. . .

(2) for money, property, services, or an extension, renewal, or refinancing of credit , to the extent obtained, by–

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition. [4]

The bankruptcy court correctly found that Clauss bore the burden of proving, by a preponderance of the evidence, that his debt was nondischargeable.[5] The court also correctly held that Clauss needed to prove the elements of misrepresentation as articulated by the Eighth Circuit in *Thul v. Ophaug (In re Ophaug)*,[6] and *Caspers v. Van Horne (In re Van Horne)*.[7] In both cases the court held that, to succeed in a § 523(a)(2)(A) claim, the creditor must prove the following: (1) the debtor made false representations; (2) at the time made, the debtor knew them to be false; (3) the representations were made with the intention and purpose of deceiving the creditor; (4) the creditor relied on the representations; and (5) the creditor sustained the alleged injury as a proximate result of the representations.[8] The court also noted that the United States Supreme Court has more recently clarified that the creditor's reliance must be justifiable in order to be actionable.[9] In so doing, the Supreme Court defined justifiable reliance as the standard applicable to a victim's conduct where, "under the

---

[4] 11 U.S.C. § 523(a)(2)(A).

[5] *Grogan v. Garner*, 498 U.S. 279,287, 111 S. Ct. 654, 659, 112 L. Ed. 2d 755 (1991).

[6] 827 F.2d 340 (8th Cir. 1987).

[7] 823 F.2d 1285 (8th Cir. 1987).

[8] *Van Horne*, 823 F.2d at 1287; *Ophaug,* 827 F.2d at 342, n. 1.

[9] *Field v. Mans*, 516 U.S. 59, 74, 116 S. Ct. 437, 446,133 L. Ed. 2d 351 (1995).

circumstances, the facts should be apparent to one of his knowledge and intelligence from a cursory glance, or he has discovered something which should serve as a warning that he is being deceived, that he is required to make an investigation of his own."[10]

We begin, therefore, with the distinction between a promise to pay and a misrepresentation. Clauss claims that Church promised to pay this obligation even if he filed for bankruptcy relief. But a promise to pay a debt in the future is not a misrepresentation merely because the debtor fails to do so.[11] Instead, Clauss was obligated to prove that Church made an intentional misrepresentation, and that Clauss justifiably relied on that misrepresentation to his detriment.[12] It is not clear from the record precisely when Church made the alleged representation that he would not discharge Clauss' debt if he filed for bankruptcy relief. It is clear from the record, however, that Church did, at the outset, promise to pay Clauss on a monthly basis, and that he did so for 15 months. Clauss did not dispute that Church may have made additional payments as well. And, as the court found, by the time Church indicated he was considering a bankruptcy case, Clauss had provided all, or virtually all, of the legal services for which payment is sought. The court found that Clauss failed to prove that a representation was made; he failed to prove when the representation was made; he failed to offer any evidence of the amount of the debt already incurred at the time the alleged representation was made; he failed to prove that, at the time he began the representation, Church had no intention of paying the debt; and he failed to prove that under the circumstances, someone with Clauss' knowledge and expertise

---

[10]*Field*, 516 U.S. at 71, 116 S. Ct. at 444.

[11]*Rust v. Tellam (In re Tellam)*, 323 B.R. 661, 664 (Bankr. N.D. Ohio 2005); *In re Shea*, 221 B.R. 491, 497 (Bankr. D. Minn. 1998).

[12]*Id.*

could justifiably rely on such a promise.[13] These findings are fully supported by the record.[14] We, therefore, affirm the judgment of the bankruptcy court.

_____

_____

[13]Clauss argued that Church never intended to pay all of the fees, and that he agreed initially to make small monthly payments while intending to discharge the bulk of the fees when the representation came to an end. There is, however, no evidence to support this allegation, and the bankruptcy court did not err when it did not consider it. Moreover, Clauss at all times could have protected himself by insisting upon a retainer, or enforcing his attorney's lien as to the papers and records in his possession at the end of the representation. Iowa Code Ann. § 602.10116(1) (West 2005) ("An attorney has a lien for a general balance of compensation upon: (1) Any papers belonging to a client which have come into the attorney's hands in the course of professional employment").

[14]We note that the Bankruptcy Code allows a debtor to reaffirm a debt, and thus, except it from discharge, if doing so does not impose an undue hardship on the debtor. 11 U.S.C. § 524(c). The courts, however, will not enforce a prepetition agreement that denies a debtor bankruptcy relief. *In re Pease*, 195 B.R. 431, 433 (Bankr. D. Neb. 1996).