MEMORANDUM
 

 RICHARD S. STAIR, Jr., Bankruptcy Judge.
 

 The Plaintiffs, Danny and Cathy Lail, initiated this adversary proceeding by filing a Complaint on December 27, 1993, alleging that the debtor is liable for his business associates’ conduct and that the resulting obligation is nondischargeable under 11 U.S.C.A. § 523(a)(2)(A) or (a)(4) (West 1993). The parties agreed at trial to rely on the Chancery Court of Roane County, Tennessee, for a determination of the amount of the debtor’s obligation, and accordingly, the au
 
 *88
 
 tomatic stay was subsequently modified by an Order entered in the debtor’s ease on November 3, 1994, to allow the parties to proceed in state court.
 
 [1]
 
 In addition, after the trial, the parties filed a written stipulation which provides that any amount owed to the Plaintiffs by the debtor individually or on behalf of Shur-Bilt Homes (Shur-Bilt) as a result of the Roane County litigation shall be nondisehargeable in the event this court decides the dischargeability issue in favor of the Plaintiffs. Therefore, the only issue before the court is whether the potential indebtedness is nondisehargeable pursuant to § 523(a)(2)(A) or (a)(4). A trial was held on October 18, 1994.
 

 This is a core proceeding. 28 U.S.C.A. § 157(b)(2)® (West 1993).
 

 I
 

 The parties executed a contract on August 24, 1992, whereby the Plaintiffs agreed to pay the debtor $75,000 for the construction of a home within 120 days of the contract execution date. The contract designated “W.C. Weaver/dba Shur-Bilt Homes” as the seller and Danny F. and Cathy D. Lail as the buyers. The contract was signed by the Plaintiffs and Paul G. Boone, an authorized representative of the debtor. Pursuant to the payment provisions of the contract, Plaintiffs paid $25,000 when the contract was executed and were to pay an additional $6,000 when the construction was partially completed.
 
 [2]
 
 The contract further provided that it was executed “in connection with a Retail Installment Contract and Mortgage of Deed of Trust by and between W.C. Weaver/dba Shur-Bilt Homes” and the Plaintiffs, and that the “Builders” were to receive a note and deed of trust. To that end, contemporaneously with the execution of the contract, the Plaintiffs executed a promissory note for $44,000 secured by a deed of trust in their real property. However, the note and deed of trust were executed in favor of Mr. Boone and Rickey D. Cornett, another authorized representative of the debtor, individually, and make no mention of W.C. Weaver or Shur-Bilt.
 
 [3]
 

 In late 1992, Boone and Cornett began construction on the Plaintiffs’ home, and on October 30, 1992, they assigned the promissory note and deed of trust executed by the Plaintiffs to John Sing for a $40,000 line of credit at Lowe’s Home Center, Inc. in Mary-ville, Tennessee, and $2,000 cash. The assignment was executed by Boone and Cor-nett in their individual capacities and makes no mention of W.C. Weaver or Shur-Bilt. Ultimately, the line of credit was used by Boone and Cornett to purchase materials for several Shur-Bilt projects, including the Plaintiffs’ home.
 

 The debtor did not learn of the Plaintiffs’ contract until sometime after late 1992, primarily because he had suffered a heart attack in December 1990 which prevented him from having anything more than minimal contacts with the business. However, once the debtor learned of the contract, he attempted to assist in the construction project. In April 1993, the project was abandoned when the home was somewhere between sixty to eighty percent complete. The debtor filed the petition commencing his Chapter 7 case on September 20, 1993.
 

 II
 

 The Plaintiffs argue that any indebtedness owed to them by the debtor is nondis-chargeable under § 523(a)(2)(A) or (a)(4), which provides:
 

 (a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—
 

 [[Image here]]
 

 
 *89
 
 (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
 

 (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor’s or an insider’s financial condition;
 

 [[Image here]]
 

 (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny[.]
 

 11 U.S.C.A. § 523(a)(2)(A), (a)(4) (West 1993). The Plaintiffs have the burden of proving nondischargeability under § 523(a) by a preponderance of the evidence.
 
 Grogan v. Garner,
 
 498 U.S. 279, 289, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991).
 

 Here, the Plaintiffs do not assert that the debtor himself obtained money through false representations, but that the false representations of Boone and Cornett should be imputed to the debtor for purposes of determining nondischargeability. In the Sixth Circuit a partner’s fraudulent acts are imputed to an innocent debtor-partner for purposes of determining dischargeability.
 
 BancBoston Mortgage Corp. v. Ledford (In re Ledford),
 
 970 F.2d 1556, 1561-62 (6th Cir.1992),
 
 cert. denied,
 
 — U.S. -, 113 S.Ct. 1272, 122 L.Ed.2d 667 (1993). Under the authority of
 
 Ledford,
 
 the deciding elements in determining whether an innocent debtor-partner’s liability is nondisehargeable are (1) the debtor was a partner; (2) the debtor’s partner committed fraud “while acting on behalf of the partnership[ ] in the ordinary course of the business”; and (3) as a partner, the debtor “shared in the monetary benefits of the fraud.”
 
 Id.
 
 at 1561.
 

 Ledford
 
 further provides that a debtor, as a general partner, is not required to be involved in the day-to-day operations of the business or have knowledge of the fraud in order to be held hable for his partner’s fraud.
 
 Id.
 
 at 1558, 1561. Moreover, under Tennessee law a debtor-partner, regardless of knowledge, is hable for another partner’s fraudulent acts perpetrated while acting on behalf of the partnership in the ordinary course of the business.
 
 Id.
 
 at 1561. Therefore, when the
 
 Ledford
 
 opinion is viewed in totahty, the first element is not that the debtor be a partner, but that the debtor be treated in the same manner as a partner for purposes of liability under Tennessee law. The debtor concedes that he, Boone, and Cornett operated Shur-Bilt as a joint venture.
 
 [4]
 
 Under Tennessee law, joint ventures are governed by partnership law.
 
 [5]
 

 Federated Stores Realty, Inc. v. Huddleston,
 
 852 S.W.2d 206, 212 (Tenn.1992);
 
 Garner v. Maxwell,
 
 360 S.W.2d 64, 67-68 (Tenn.Ct.App.1961), ce
 
 rt. denied, id.
 
 at 64 (Tenn.1962). Accordingly, any fraudulent act committed by Boone or Cornett while acting on behalf of and in the ordinary course of the business can be imputed to the debtor for purposes of determining liability.
 
 See Ledford,
 
 970 F.2d at 1561. Therefore, the first element of
 
 Led-ford
 
 has been satisfied.
 

 As to the second element, the Plaintiffs must prove that Cornett or Boone committed fraud while acting on behalf of the joint venture in the ordinary course of the business. This element requires two determinations: (1) whether fraud was committed by Cornett or Boone; and (2) whether the fraud was committed while acting on behalf of the joint venture in the ordinary course of the business. In order to prove fraud under § 523(a)(2)(A), the Sixth Circuit requires the creditor to prove that (1) “the debtor[’s partner] obtained money through a material misrepresentation that at the time the debtorfs partner] knew was false or made with gross recklessness as to its truth”; (2) the debtor’s partners intended to deceive the creditor; (3) the creditor “reasonably relied on the false representation”; and (4) the creditor’s “reliance was the proximate cause of loss.”
 
 Coman v. Phillips (In re Phillips),
 
 804 F.2d 930, 932 (6th Cir.1986) (per curiam).
 

 The Plaintiffs assert that a false representation was made by Mr. Boone when
 
 *90
 
 the parties executed the contract because at that time Shur-Bilt did not intend to construct a home for the Plaintiffs. However, the Plaintiffs’ home was at least sixty percent complete when Shur-Bilt abandoned the project, and Mr. Boone testified that at the time the parties executed the contract, Shur-Bilt was not having any difficulty completing its other construction projects. Accordingly, the debtor’s partners originally intended to construct the Plaintiffs’ home and only after construction began did they decide to abandon the project. Based on these facts, the Plaintiffs may have a cause of action against the partners of Shur-Bilt for breach of contract; however, for purposes of determining dischargeability, courts generally agree that a breach of contract alone will not establish an intent to defraud.
 
 See In re Baker,
 
 139 B.R. 692, 694 (Bankr.N.D.Ohio 1992). Instead,
 

 a false representation or false pretense under § 523(a)(2) ... “ ‘[must] encompass statements that falsely purport to depict
 
 current or past facts.
 
 [A debtor’s] promise ... related to [a]
 
 future action
 
 [which does] not purport to depict current or past fact ... therefore cannot be defined as a
 
 false representation or a false
 
 pretense.’ ”
 

 Bank of La. v. Bercier (In re Bercier),
 
 934 F.2d 689, 692 (5th Cir.1991) (alterations and omissions in original) (quoting
 
 Keeling v. Roeder (In re Roeder),
 
 61 B.R. 179, 181 (Bankr.W.D.Ky.1986) (quoting
 
 Peoples Sec. Fin. Co. v. Todd (In re Todd),
 
 34 B.R. 633, 635 (Bankr.W.D.Ky.1983))) (citing 3
 
 Collier on Bankruptcy
 
 ¶523.08[4] (15th ed. 1994) (“A mere promise to be executed in the future is not sufficient to make a debt non-dischargeable, even though there is no excuse for the subsequent breach.”)). The partners’ abandonment may constitute a breach of contract; however, it is classified as a future action and not a false representation or false pretense under § 523(a)(2)(A).
 
 [6]
 

 Conversely, Mr. Boone’s representations to the Plaintiffs regarding the assignment of their note supports the Plaintiffs’ contention that the partners of Shur-Bilt committed fraud during the execution of the contract, note, and deed of trust.
 
 [7]
 
 Mr. Boone testified that when the contract was executed he told the Plaintiffs that their note might be assigned. Mr. Lail denies that they were told of a possible assignment. In support of Mr. Boone’s testimony is a provision in the deed of trust that clearly allows for a sale of the note without prior notice to the borrowers. However, inconsistencies between the documents support the Plaintiffs’ contention that Mr. Boone made false representations during the execution of the documents.
 

 The interest provision in the contract and the note are inconsistent: the contract provides that the Plaintiffs are not responsible for interest during the construction period while the note requires the Plaintiffs to pay eight percent interest. Mr. Boone testified that the reason for including the eight percent interest provision in the note was to facilitate a future sale of the note and deed of trust. However, according to Mr. Boone, the parties agreed that the Plaintiffs were not liable for interest until the project was completed; therefore, the contract, but not the note, was amended in accordance with their agreement.
 
 [8]
 
 Apparently, Shur-Bilt did not enter a subsequent agreement with John Sing, the assignee, to ensure that Shur-Bilt, instead of the Plaintiffs, would be held hable for interest during the construction period.
 

 Obviously, there was an oversight on someone’s part when the conflicting documents were drafted. This oversight became a fraudulent misrepresentation when Mr. Boone explained to the Plaintiffs that the documents conflicted because they were “standard” forms and assured them that the
 
 *91
 
 addendum to the contract,, which provided they would not pay interest during the construction period, would be binding. Unfortunately, the contract addendum bound the parties but not John Sing, the assignee of the note and deed of trust.
 

 Mr. Boone also made false representations to the Plaintiffs regarding his intention of assigning the note and deed of trust and his subsequent use of the proceeds. Originally, the Plaintiffs planned to secure a construction loan from a bank .instead of financing the construction project through Shur-Bilt. At Mr. Boone’s suggestion, however, the Plaintiffs gave their $31,000 cash to Shur-Bilt and executed the note and deed of trust for the remainder of the purchase price. The Plaintiffs chose this option because Mr. Boone told them that Shur-Bilt would use an existing line of credit to procure the construction materials for their home, and “the note was to be strictly for collateral.” Contrary to his representations to the Plaintiffs, Mr. Boone ultimately assigned the note and deed of trust to finance numerous construction projects. Moreover, Mr. Boone testified that he intentionally included an eight percent interest provision in the note to make it marketable. Mr. Lail testified that if Mr. Boone had disclosed his intention of assigning the note and deed of trust, the Lails would and could have obtained more conventional financing from a bank.
 

 With regard to whether the Plaintiffs’ reliance on Mr. Boone’s misrepresentations was reasonable, the
 
 Ledford
 
 court clarified the third element of the
 
 Phillips
 
 test for fraud. Prior to
 
 Ledford,
 
 five factors were routinely considered in determining reasonableness.
 
 [9]
 

 See Phillips,
 
 804 F.2d at 933. Although the Sixth Circuit reiterated these factors in
 
 Ledford,
 
 the court provided, “Assuming that a reasonableness requirement still exists after
 
 Grogan v. Garner
 
 [498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) ] the requirement merely prevents creditors from looking the other way in the face of facts that ought to raise suspicions.” 970 F.2d at 1560. Furthermore, “the decisions that refer to ‘reasonable’ or justifiable reliance ... teach only that dischargeability should not be denied where a creditor’s asserted reliance would be so unreasonable as to negate any actual reliance.”
 
 Id.
 

 The parties provided the court with no evidence suggesting the Plaintiffs were represented by an attorney during the negotiation and execution of the contract, note, and deed of trust. However, Mr. Boone testified that the note and deed of trust were drafted by Shur-Bilt’s attorney. The only testimony regarding the Plaintiffs’ sophistication in construction financing transactions was provided by Mr. Lail when he stated that he had previously built a home for himself which involved hiring subcontractors. Apparently, the parties did not have a former personal or business relationship with one another. According to the parties’ experience in the construction and financing business, Shur-Bilt was in a more advantageous position. Moreover, when the Plaintiffs, instead of “looking the other way in the face of facts that ought to raise suspicions,” asked Mr. Boone about the inconsistencies within the documents, he responded with false representations.
 
 See Ledford,
 
 970 F.2d at 1560. Here, the Plaintiffs’ reliance on these misrepresentations is not “so unreasonable as to negate any actual reliance.”
 
 See id.
 

 Based on the foregoing facts, the court finds that Mr. Boone knowingly and intentionally made false representations to the Plaintiffs who reasonably relied on these misrepresentations and were induced into signing the conflicting documents. These misrepresentations proximately caused any loss incurred by the Plaintiffs for purposes of determining the dischargeability of the Defendant’s potential obligation. The first part
 
 *92
 
 of the second element of
 
 Ledford,
 
 has been satisfied.
 

 The second element of
 
 Ledford
 
 also requires the Plaintiffs to prove that Mr. Boone made the false representations while acting on behalf of the joint venture in the ordinary course of the business. When the misrepresentations were made, Shur-Bilt was in the business of home construction and Mr. Boone was responsible for selling and constructing houses for the business. The Plaintiffs’ contract named the debtor and Shur-Bilt as the seller and was signed by Mr. Boone as an “authorized representative.” Moreover, the debtor admits that he, Boone, and Cornett operated the business as a joint venture.
 
 [10]
 
 Furthermore, Mr. Boone testified that the note and deed of trust named Boone and Cornett instead of Shur-Bilt because they had been responsible for the paperwork and because Shur-Bilt had not been incorporated. Accordingly, the court finds that the second element of
 
 Ledford
 
 has been satisfied.
 

 The Plaintiffs have also presented evidence sufficient to satisfy the last element of
 
 Ledford. Ledford
 
 provides that an innocent debtor-partner can benefit from his partner’s fraud if the funds received as a result of the fraud were used to finance a project from which the debtor stood to profit. 970 F.2d at 1561. According to the agreement between the debtor and his partners, the debtor stood to profit from the Plaintiffs’ contract once the construction was completed and payment was received. Although the note and deed of trust do not name the debtor or his business as a party, the debt- or’s partners did not divert the proceeds from the assignment for their own use. Instead, they used the proceeds to finance construction projects from which the debtor stood to profit.
 
 See id.
 
 Furthermore, the contract specifically stated that it was executed in connection with a note and deed of trust in favor of the debtor and Shur-Bilt. The partners’ actions in not complying with this contract provision and making the note payable to them in their individual capacities might support an action by the debtor against his partners; however, it will not support the debtor’s defense against the Plaintiffs for purposes of determining dis-chargeability.
 

 The Plaintiffs originally asked the court to determine the amount of damages owed by the debtor or, in the alternative, to establish a constructive trust. The parties agreed at trial to rely on the Chancery Court of Roane County, Tennessee, for a determination of the amount of the debtor’s obligation. As to the Plaintiffs’ alternative argument, the Sixth Circuit has directed that a bankruptcy court may only impose a constructive trust if one was established by a state court under state law prior to bankruptcy.
 
 XL/Datacomp, Inc. v. Wilson (In re Omegas Group, Inc.),
 
 16 F.3d 1443, 1450-53 (6th Cir.1994). According to
 
 Omegas,
 
 the only remedy available here is for the debtor’s potential debt to be declared nondischargeable.
 
 See id.
 
 at 1453.
 

 Based on the foregoing, a judgment will be entered that any amount owed by the debtor to the Plaintiffs in relation to the contract, note, and deed of trust executed by the debt- or’s partners and the Plaintiffs on August 24, 1992, shall be nondischargeable under § 523(a)(2)(A). A discussion of the Plaintiffs’ second theory under § 523(a)(4) is unnecessary.
 

 [1]
 

 . The state court action, styled
 
 Danny F. Lail and Cathy D. Lail v. W.C. Weaver, d/b/a Shur-Bilt Homes, Ricky D. Cornett, Paul G. Boone and John Sing,
 
 Case No. 12,279, was pending at the time the debtor commenced his bankruptcy case.
 

 [2]
 

 . The Plaintiffs subsequently paid the $6,000.
 

 [3]
 

 . The note states that “the undersigned promise(s) to pay to the order of: RICKEY D. COR-NETT and PAUL G. BOONE the principal sum of FORTY FOUR THOUSAND AND NO/100 DOLLARS ($44,000.00) with interest from date at the rate of EIGHT PER CENTUM (8%), per annum until paid." The deed of trust states that "this conveyance is made IN TRUST to secure the full, prompt, and final payment of any and all indebtedness ... to RICKEY D. CORNETT and PAUL G. BOONE (Beneficiary), their successors and assigns.”
 

 [4]
 

 . The debtor did not testify. However, after final arguments, the debtor's attorney, Mr. Boswell, in response to a query by the court, acknowledged that "at a minimum” the debtor, Boone, and Cornett operated Shur-Bilt as a joint venture.
 

 [5]
 

 . For purposes of this Memorandum, the debtor, Boone, and Cornett will hereafter be referred to as partners.
 

 [6]
 

 .The Plaintiffs also assert that the partners’ use of the line of credit for other Shur-Bilt projects was a felonious misapplication of contract proceeds under Tenn.Code Ann. § 66-11-138 (1993). Here, the alleged commission of a felony is also a future act which does not constitute a false representation or false pretense under § 523(a)(2)(A).
 

 [7]
 

 . Mr. Cornett did not testify at trial and this court has not been presented with sufficient evidence to determine if Mr. Cornett made any specific false representations to the Plaintiffs.
 

 [8]
 

 . The addendum to the contract provides: "The Buyers are not to be responsible for any interest during construction of the house.”
 

 [9]
 

 . The factors are:
 

 (1) whether the creditor had a close personal relationship or friendship with the debtor; (2) whether there had been previous business dealings with the debtor that gave rise to a relationship of trust; (3) whether the debt was incurred for personal or commercial reasons; (4) whether there were any "red flags" that would have alerted an ordinarily prudent lender to the possibility that the representations relied upon were not accurate; and (5) whether even minimal investigation would have revealed the inaccuracy of the debtor’s representations.
 

 Ledford,
 
 970 F.2d at 1560.
 

 [10]
 

 .
 
 See supra
 
 note 4.