**In re James/Brenda MILLS, Debtors.**

**Joseph Mack, et al., Plaintiffs,**

**v.**

**James/Brenda Mills, Defendants.**

**No. 05-3204.**

United States Bankruptcy Court, N.D. Ohio.

May 10, 2006.

600

John N. Graham, Toledo, OH, for trustee.

Eugene F. Canestraro, Toledo, OH, for debtors.

### DECISION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause is before the Court after a Trial on the Plaintiffs' Complaint to Determine Dischargeability. The Plaintiffs bring their Complaint under the statutory exception to dischargeability set forth in 11 U.S.C. § 523(a)(2)(A). At the conclusion of the Plaintiffs' case-in-chief, the Defendants moved for a directed verdict. As to the Co–Defendant, Brenda Mills, the Court granted this Motion based upon her

lack of involvement in the events which gave rise to the Plaintiffs' cause of action under § 523(a)(2)(A). As to the Defendant, James Mills, however, the Court Denied the Motion, finding that further consideration of the evidence was necessary. The Court has now had this opportunity, and finds, for the reasons herein explained, that the Defendant, James Mills, is also entitled to judgment in his favor. Accordingly, the Plaintiffs' Complaint to Determine Dischargeability will be Dismissed.

## BACKGROUND

The Defendants/Debtors, James and Brenda Mills, are husband and wife. In March of 2005, the Debtors commenced a case in this Court under Chapter 7 of the United States Bankruptcy Code. In their petition, the Debtors set forth the Plaintiffs, Joseph and Jodie Mack, also husband and wife, as the holders of an unsecured claim. The origins of this claim arose from services Mr. Mills failed to perform as required by contract, and for which judgment in the amount of $42,000.00 was subsequently entered in an action brought by the Plaintiffs in state court. (Pl.Ex. 43). The Plaintiffs' Complaint seeks to have this claim held nondischargeable. With respect to this action, the succeeding discussion shall constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

## FACTS

Prior to seeking bankruptcy relief, the Debtor, Mr. Mills, operated "Mills Constructing and Remodeling."[1] (Pl.Ex. No. 1). In the summer of 2002, Mr. Mills entered into a contractual relationship with the Plaintiffs to restore and renovate an old church which was to be turned into the Plaintiffs' residence. To save money on the project, the Plaintiffs were to personally perform a significant part of the restoration and renovation work; Mr. Mills' business operation was then to perform the remaining work, which included the erection of a garage and the installation of aluminum siding and windows. Although a written contract was executed, the specific details of the Parties' respective responsibilities were never committed to writing. (Def.Ex. F).

To fund the project, the Plaintiffs obtained bank financing from which they would receive periodic draws. During the course of the project, many delays and other problems arose. Of great significance in this matter, liens were placed against the Plaintiffs' property after Mr. Mills failed to properly remunerate funds received from the Plaintiffs to the proper materialmen. The total amount of the liens was approximately $11,000.00, and they were only removed after the Plaintiffs personally paid the materialmen, effectively causing the Plaintiffs to pay for the same materials twice. (Pl.Ex. 27). Although by this time their business relationship was already strained, it was this event which, after approximately one-half year into the project, precipitated the complete termination of any contact between the Parties.

Mr. Mills does not dispute that he failed to fully perform his contractual duties for the Plaintiffs, but testified that no fraud was intended. To this end, Mr. Mills ascribed his failure to perform his obligations for the Plaintiffs to the confluence

---

1. The Debtor, Mrs. Mills, although occasionally assisting her husband, had no significant involvement with this business, and, although listed as a statutory agent, was not brought as a party defendant in the Plaintiffs' state court action in which the just described monetary judgment was entered. (Def.Ex. A). It was partially on this basis that, at the conclusion of the Plaintiffs' case-in-chief, a directed verdict was entered in her favor.

of two circumstances. First, it is Mr. Mills' position that the Plaintiffs did not cooperate in holding up their end of the bargain, failing to satisfactorily complete their work-projects, thereby making it at times very difficult for Mr. Mills to perform his contractual duties. The cumulative effect of these deficiencies caused, in Mr. Mills words, the Plaintiffs' project to go over budget

A particular point of contention here was the flooring the Plaintiffs, themselves, were to install. According to Mr. Mills, who testified that he has over 20 years of experience as a carpenter, the floor the Plaintiffs were required to install, and did eventually install, but in a dilatory manner, did not meet minimal building code standards-e.g., lack of sufficient supports. Thus, according to Mr. Mills, until such problems were rectified, he could not in good conscious proceed with any of his contractual obligations where the integrity of the flooring would come into play.

In addition to these particular problems, Mr. Mills also ascribed his breach of contract with the Plaintiffs to the overall problems being encountered by his contracting business. In further detail, Mr. Mills related that, while he was performing services for the Plaintiffs, his business, which was involved in multiple projects, was "hemorrhaging money." As a result, Mr. Mills acknowledged that, in order to keep his business afloat, he did not segregate his accounts, instead using funds received on one project to pay for the immediate needs of another project. Furthermore, according to Mr. Mills, the problems he was experiencing with his contracting business were only exacerbated by the Plaintiffs' project going over budget. In fact, Mr. Mills depicted the Plaintiffs' project as the one which pushed his business over the edge, explaining that of the hundreds of projects he has undertaken to perform, the Plaintiffs' project was the only one he was never able to complete.

After the termination of their business relationship, the Plaintiffs commenced suit against Mr. Mills. (Def.Ex. A). However, just prior to Trial, Mr. Mills consented to the entry of a judgment in the Plaintiffs' favor in the amount of $42,000.00. (Pl.Ex. 43). According to the testimony elicited from the Plaintiff, Mr. Mack, this amount was based upon damages incurred as the result of the mechanics liens being filed against his property together with Mr. Mills only completing about 60% of the work for which he was contracted. Mr. Mills, although agreeing that he did not fully perform his contractual duties, put his performance figure somewhat higher, at between 65–85%.

## DISCUSSION

The Plaintiffs' complaint to determine dischargeability is brought pursuant to § 523(a)(2)(A) which provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]

Proceedings to determine the dischargeability of particular debts, such as that brought by the Plaintiff under this provision, are deemed core proceedings pursuant to 28 U.S.C. § 157(b)(2)(I). Accordingly, this Court has the jurisdictional authority to enter final orders and judgments in this matter. *Id.;* 28 U.S.C. § 1334.

■ Section 523(a)(2)(A) of the Bankruptcy Code implements the long-standing bankruptcy policy that only those debts which are honestly incurred are entitled to the benefits of a bankruptcy discharge. However, so as to also further the fresh-start policy of the Bankruptcy Code, this exception to discharge is narrowly construed. In conformance therewith, the moving party bears the ultimate burden of persuasion to establish, by a preponderance of the evidence, the applicability of § 523(a)(2)(A). *Graffice v. Grim (In re Grim)*, 293 B.R. 156, 162–63 (Bankr. N.D.Ohio 2003).

■ In partial support of their burden under § 523(a)(2)(A), the Plaintiffs raised in their PreTrial brief what must be construed to be a purely legal argument: that the doctrine of *res judicata* applied to the "terms and conditions of the underlying contract and action."(Doc. No. 17, at pg. 3). While not entirely clear from its context, to the extent that the Plaintiffs offer this argument for the limited purpose of establishing their standing to bring this action, they are correct. Federal law provides that state court judgments are to be afforded *res judicata* effect in the federal courts. 28 U.S.C. § 1738 ("judicial proceedings . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken.") Thus, the state court judgment entered in the Plaintiffs' favor,

which established Mr. Mills' liability—and hence now affords the Plaintiffs a "claim" in bankruptcy for which they may seek a dischargeability determination [2]—is incapable of being collaterally attacked in this Court.

■ At the same time, the state court judgment entered in the Plaintiffs' favor has no *res judicata* effect for purposes of this Court making an independent determination of dischargeability. Determinations concerning fraud under § 523(a)(2)(A) are within the exclusive jurisdiction of this Court, while the doctrine of *res judicata* extends only to previous "claims"—that is, a prior cause of action. 11 U.S.C. § 523(c). Consequently, by definition, the *res judicata* doctrine is incapable of being applied from a state court judgment to a dischargeability proceeding in bankruptcy court.[3] *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979). The Court accordingly now turns to address the weight of the evidence on the Plaintiffs' § 523(a)(2)(A) complaint.

■ It is well-established that for the moving party to sustain their § 523(a)(2)(A) evidentiary burden, the existence of all these elements must be shown:

(1) the debtor made false representations;

(2) the debtor knew such representations to be false at the time they were made;

---

**2.** By its terms, only "debts" are subject to a determination of dischargeability under § 523(a) ("A discharge . . . does not discharge an individual debtor from any *debt* . . .") (emphasis added). A "debt" is defined in the Bankruptcy Code as simply "liability on a claim[.]" § 101(12). A "claim," in turn, is defined as a "right to payment," which the Supreme Court has held means "nothing more nor less than an enforceable obligation." § 101(5)(A); *Pennsylvania Dept. of Public Welfare v. Davenport*, 495 U.S. 552,

559, 110 S.Ct. 2126, 2131, 109 L.Ed.2d 588 (1990).

**3.** The doctrine of collateral estoppel could, however, apply. *Grogan v. Garner*, 498 U.S. 279, 284–85 n. 11, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) ("We now clarify that collateral estoppel principles do indeed apply in discharge exception proceedings pursuant to § 523(a).")

(3) the representations were made with the intent to deceive the creditor;

(4) the creditor relied on the representations; and

(5) the creditor's loss was the proximate result of the misrepresentation having been made.

*Rembert v. AT & T Universal Card Servs., Inc. (In re Rembert)*, 141 F.3d 277, 280–81 (6th Cir.1998). As is typical in most cases brought under § 523(a)(2)(A), the existence of the second and third elements constituted the focal point of the Parties' dispute: whether Mr. Mills, having present knowledge as to the falsity of the representations, acted with the intent to deceive the Plaintiffs?

■ In *Rembert v. AT & T Universal Card Servs., Inc. (In re Rembert)*, the Sixth Circuit Court of Appeals held that: "the proper inquiry to determine a debtor's fraudulent intent is whether the debtor subjectively intended to repay the debt." 141 F.3d 277, 281 (6th Cir.1998). A subjective approach,—as opposed to an objective, reasonable person standard—requires that the trier-of-fact focus solely on the individual characteristics of the debtor, meaning that traits such as ignorance, incompetency and ineptness may, if established, serve as a valid defense to a § 523(a)(2)(A) action. Thus, of utmost importance in any fraudulent intent analysis is the credibility the Court attaches to the testimony of the debtor and any other witnesses called to testify.

■ Yet, like with an objective approach, a subjective approach still permits the use of circumstantial evidence—e.g., those traditional indicia of fraud—to ascertain a debtor's intentions because rarely, if ever, will a debtor actually admit to acting in a fraudulent manner. *EDM Machine Sales Inc. v. Harrison (In re Harrison)*, 301 B.R. 849, 855 (Bankr.N.D.Ohio 2003). The only caveat: the Sixth Circuit has held that, in looking to circumstantial evidence, a court should not engage in "factor counting." *In re Rembert*, at 282, *citing Chase Manhattan Bank v. Murphy (In re Murphy)*, 190 B.R. 327, 332 (Bankr.N.D.Ill. 1995). Instead, the Court in *In re Rembert* directed that what a bankruptcy court is "to do is determine whether all the evidence leads to the conclusion that it is more probable than not that the debtor had the requisite fraudulent intent." *Id.*

In this proceeding, much of the testimony presented by the Parties at the Trial involved each blaming the other for the shortcomings which befell the restoration and renovation work on the Plaintiffs' residence. On the one hand, it is Mr. Mills' position that the Plaintiffs, by not holding up their end of the bargain, unduly interfered with his ability to perform, which ultimately made it impossible for him to complete the project. On the other hand, the Plaintiffs maintain that Mr. Mills never intended to complete the project, intending instead to convert their funds to his own use. As taken from their PreTrial Brief, "Defendants will be shown to have intentionally taken funds from Plaintiffs knowing that Defendants will be unable to perform as promised." (Doc. No. 17, at pg. 3).

■ Alone, a broken promise will not establish the existence of any intent to deceive. *Jacobs v. Ballard (In re Ballard)*, 26 B.R. 981, 985 (Bankr.D.Conn. 1983). Rather, the existence of fraudulent intent under § 523(a)(2)(A) hinges on whether the debtor, at the time the debt is incurred, intended to honor the obligation. *Clyde–Findlay Area Cr. Union v. Burwell (In re Burwell)*, 276 B.R. 851, 854 (Bankr. N.D.Ohio 2002). Although the intent to defraud must arise in conjuncture with the debt, a debtor's subsequent conduct will often help to shed light on the debtor's

state of mind at the time of the transaction. *Williamson v. Busconi,* 87 F.3d 602, 603 (1st Cir.1996).

██ Of significance, a debtor acting with the intent to defraud will not generally undertake measures to perform their obligation. *Accord Anastas v. American Savings Bank (In re Anastas),* 94 F.3d 1280, 1285 (9th Cir.1996). And logically, the opposite also holds true; where a debtor undertakes significant steps to perform as promised, any inference of fraud is muted. On whole then, a type of an inverse relationship exists when weighing a debtor's intentions: the further the extent of performance, the less likely there exists fraud. To use a simple credit transaction as an example, it is the highly unusual situation where a person taking extensions of credit—e.g., cash advances—with the present intention of converting the funds will make any meaningful attempt to repay the obligation. *Minnesota Client Security Board v. Wyant (In re Wyant),* 236 B.R. 684, 695 (Bankr.D.Minn.1999) (timely and substantial payments are inconsistent with a debtor's intent to incur debt without repaying it).

██ When placed within this framework, it becomes difficult to see Mr. Mills' conduct as fraudulent. Of great significance, over the course of approximately one-half year, Mr. Mills put considerable time and effort into the restoration and renovation work on the Plaintiffs' home, completing, by the Plaintiffs' own admission, at least 60% of the project. *See Lail v. Weaver (In re Weaver),* 174 B.R. 85, 89–90 (Bankr.E.D.Tenn.1994) (where project was 60% completed at time of its abandonment, intent to defraud not shown).

The 60% figure is also best viewed as a floor rather than a ceiling, with other evidentiary indicators lending support to an underlying theme of Mr. Mills' defense: that his failure to complete the work on the Plaintiffs' residence stemmed, at least in part, from events out of his control, as opposed to a premeditated plan to leave the project incomplete. Of note, the Court finds it credible that Mr. Mills had serious misgivings with the manner in which the Plaintiffs installed the floor in their home, giving rise to concerns of safety as well as tort liability. Thus, Mr. Mills' nonperformance was, at least from a subjective standpoint, partially justified.

Notwithstanding, the Plaintiffs argue that the facts of this case are akin to those in *Stifter v. Orsine (In re Orsine),* wherein this Court held as nondischargeable under § 523(a)(2)(A), a debt arising out of contractor's failure to perform his contractual obligation to install windows in the creditors' building complex. 254 B.R. 184, 188 (Bankr.N.D.Ohio 2000). Yet, while some similarities do exist, upon closer inspection it can be seen that the Plaintiffs' reliance on *In re Orsine* is misplaced, as exemplified by this Court's statement therein:

> once a contractor accepts money for his or her services, that contractor must take reasonable steps to protect that creditor's interest, and that the failure to do so, coupled with a contractor's false representation(s), will rise to the level of an intentional deception for purposes of § 523(a)(2)(A). Consequently, in this case, as it is clear that the Defendant did not place an order for the windows he was to install, and thereafter the Defendant did not make any effort to safeguard the money the Plaintiffs had entrusted to him, the Court holds the Plaintiffs have met their burden of proof with respect to the third element of § 523(a)(2)(A).

*Id.* at 189. *In re Orsine* thus simply reinforces this Court's analysis so far: that fraud is less likely to exist when, in contrast to the facts of *In re Orsine,* a con-

tractor completes a significant portion of their contractual obligation as Mr. Mills did for the Plaintiffs.

The Plaintiffs also argue that Mr. Mills' conduct must be viewed as fraudulent because he was using business receipts obtained on one project, including the Plaintiffs', to pay for other projects. In the words of Plaintiffs' counsel: Mr. Mills was "robbing Peter to pay Paul." While not denying this practice, Mr. Mills responded that this was done out of necessity because at the time his business was facing financial hardships.

It is not an uncommon occurrence for many businesses, as they begin their slide into insolvency, to use funds received from one project to pay for another. Obviously, such a practice cannot be condoned. Yet, alone, such a practice does not establish that a debtor acted with the intent to defraud. *Thompson v. Brookshire (In re Brookshire)*, 17 B.R. 308, 311 (Bankr. N.D.Ga.1982).

Rather, the pertinent question still comes down to the debtor's subjective intent at the time when they were allocating the funds received from one project to pay for the other. Ergo, if done as a stopgap measure for the express purpose of salvaging the business, then regardless of the soundness of the business decision, it cannot be viewed as fraudulent. As explained by the Sixth Circuit Court of Appeals in *In re Rembert*, a case involving the dischargeability of a credit card debt under § 523(a)(2)(A):

> the focus should not be on whether the debtor was hopelessly insolvent at the time he made the credit card charges. A person on the verge of bankruptcy may have been brought to that point by a series of unwise financial choices, such as spending beyond his means, and if ability to repay were the focus of the fraud inquiry, too often would there be

an unfounded judgment of non-dischargeability of credit card debt. Rather, the express focus must be solely on whether the debtor maliciously and in bad faith incurred credit card debt with the intention of petitioning for bankruptcy and avoiding the debt. A finding that a debt is non-dischargeable under 523(a)(2)(A) requires a showing of actual or positive fraud, not merely fraud implied by law. While we recognize that a view to the debtor's overall financial condition is a necessary part of inferring whether or not the debtor incurred the debt maliciously and in bad faith, the hopeless state of a debtor's financial condition should never become a substitute for an actual finding of bad faith.

141 F.3d at 281, *quoting Anastas v. American Savings Bank (In re Anastas)*, 94 F.3d 1280, 1285–86 (9th Cir.1996).

Examined from this perspective, nothing would indicate that, when using the funds received from the Plaintiffs' project to pay for other projects, it was anything but Mr. Mills' subjective intention to salvage his business. Of special importance, no evidence was produced that Mr. Mills was improperly converting funds, by way of out of ordinary course transfers, from his business to his personal use. Also out of alignment with an intent to defraud, Mr. Mills never attempted to hide his whereabouts at the time his business collapsed.

Finally, the evidence also shows that of the hundreds of construction projects he undertook to perform during the operation of his business, the only project he failed to fully complete was that of the Plaintiffs. While this is naturally of scant comfort to the Plaintiffs, it does mitigate against the existence of fraud by lending credibility to Mr. Mills' position that the difficulties he encountered, while working on the Plaintiffs' project, were a significant contributing factor in the demise of his business.

In conclusion, the weight of the evidence does not support the position that Mr. Mills engaged in a premeditated plan to leave the Plaintiffs' project incomplete so as to convert their funds. In this same way, and while not ascribing particular blame, the evidence also shows that the Plaintiffs were, at least partially responsible, for many of the problems they encountered with their project. For these reasons then, a finding of nondischargeability under § 523(a)(2)(A) cannot be entered.

In reaching the conclusions found herein, the Court has considered all of the evidence, and arguments of counsel, regardless of whether or not they are specifically referred to herein.

Accordingly, it is

**ORDERED** that the Complaint of the Plaintiffs, Joseph and Jodie Mack, be, and is hereby, DISMISSED.